**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1) SHANNON NICHOLE MOODY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | **Case No. 11-CV-098-JHP-FHM** |
| vs. | ) | |
| | ) | |
| 1) OKLAHOMA DEPARTMENT OF | ) | |
| CORRECTIONS, a Governmental | ) | |
| Agency, | ) | |
| | ) | |
| 2) GREG PROVINCE, in his Individual | ) | |
| Capacity and in his Official Capacity | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**[1]

Before the Court are Defendants' Motion for [Partial] Summary Judgment,[2] Plaintiff's

Response to Defendants' Motion for Summary Judgment,[3] and Defendants' Reply to Plaintiff's

Response to Defendants' Motion for Summary Judgment.[4] As the parties' summary judgment

briefing includes arguments related to the evidentiary dispute over Plaintiff's 2008 Equal

Employment Opportunity Commission filings, the Court also considers Defendants' Motion *in*

*Limine*,[5] and Plaintiff's Response to Defendant's [sic] Motion *in Limine*.[6]

---

[1]Page number citations in this Opinion and Order refer to the CM/ECF pagination.

[2]Docket No. 51.

[3]Docket No. 55.

[4]Docket No. 65.

[5]Docket No. 56.

[6]Docket No. 67. Defendants' Reply to Plaintiff's Response to Defendants' Motion *in*
*Limine* was due July 10, 2012. No Reply was filed, therefore the Court deems Defendants' Reply

## **BACKGROUND**

**A. Undisputed Factual Background**[7]

In July 2007, Plaintiff began employment with Defendant Oklahoma Department of Corrections (ODOC) at the Dick Conner Correctional Center (the Facility).[8] On October 16, 2008, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) based upon sex.[9] The October 2008 Charge detailed three incidents of sexual harassment. The first was a February 2008 comment by corrections officer Jake Long to fellow officer Ricky Cross, lewdly stating that Plaintiff "would have sex with Cross, if [Cross] were to take [Plaintiff] the soda."[10] The second incident involved April 15, 2008 comments by Captain Joel Sutton suggestively inquiring as to Plaintiff's sexual preference and questions from Sutton in the presence of other officers in reference to Plaintiff's breasts.[11] The Charge further alleges that following Sutton's inappropriate questions, members of Sutton's team began frequently calling Plaintiff's station to inquire about her breasts.[12] The third reported incident occurred on August 3, 2008. Plaintiff reported that Officer David DeAndre approached Plaintiff from behind as she was bent over

waived.

[7]The following facts are either not specifically controverted by Plaintiff in accordance with Local Civil Rule 56.1(c) or are described in the light most favorable to Plaintiff as the non-moving party.

[8]Plaintiff's Response to Defendants' Motion for Summary Judgment at 11, Docket No. 55.

[9]Defendants' Motion for Summary Judgment at 9, Docket No. 51.

[10]2008 EEOC Charge Detail Inquiry at 8, Docket No. 51-1.

[11]*Id.*

[12]*Id.*

2

and grabbed Plaintiff's buttocks and "private parts."[13]

After filing her charge, Plaintiff continued employment with ODOC, and continued to suffer discrimination and harassment. Shortly after Plaintiff filed her 2008 Charge,  Plaintiff alleges superior officers Captain Price and Sergeant Bowers told multiple co-workers to stay away from Plaintiff because she would file sexual harassment charges against them.[14] On November 18, 2008, Plaintiff filed a written report with her supervisor about lewd and offensive graffiti referencing Plaintiff found written on a denim blanket covering the stairwell in the tower work area.[15] Plaintiff alleges another incident in December of 2008, where Sergeant Mark Graham and Officer Mike Jones asked a new officer if he would pay $700 to have sex with Plaintiff and if Plaintiff "was good enough in bed for that kind of money."[16]

In or around January 2009, more offensive graffiti regarding Plaintiff's breasts was scrawled on the walls of the tower work area and in the tower  logbook.[17] These incidents were reported to Plaintiff's superiors, who showed the logbook to Plaintiff's coworkers.[18] Plaintiff also references

---

[13]*Id. See also* Amended Complaint at 3, Docket No. 23.

[14]*See* Affidavit, 2010 EEOC Intake at 10-11, Docket No. 55-2. *See also* Deposition of Gregory Province at 16, 77:3-12, Docket No. 55-12 (referencing Warden Province's knowledge of the Price incident).

[15]*See* Incident/Staff Report at 1, Docket No. 51-12.

[16]*See* Affidavit, 2010 EEOC Intake at 11, Docket No. 55-2.

[17]*Id.* at 12. *See also* Deposition of Shannon Moody at 13-14, 90:20-91:20, Docket No. 55-3. Plaintiff's Response to Defendants' Motion for Summary Judgment indicates that the logbook graffiti occurred on December 28, 2008. Although the lewd phrases appear on the logbook page date "12/28/08," examination of the evidence indicates the January date in Plaintiff's 2010 EEOC affidavit is more likely correct. *See also* Logbook Note at 2, Docket No. 55-10 (notation by Curtis Hood that he had reviewed the logbook graffiti on 3/1/09).

[18]*See* Affidavit, 2010 EEOC Intake at 11, Docket No. 55-2.

an instance when a Sergeant Gomez apparently tricked Plaintiff into viewing pornographic pictures.[19]  In December 2009, Plaintiff alleges Officer Eric Sofian asked Plaintiff for naked pictures of her breasts.[20]  Further, Plaintiff generally alleges that shift-meetings were  hostile, with male officers hitting each other's genitals, telling dirty jokes, and using lewd and offensive language that was generally derogatory toward women.[21] Plaintiff also cites near constant rumors, allegedly spread by superior officers and male co-workers, that Plaintiff was a prostitute, a stripper, and that she had sexual relations with inmates.[22] Plaintiff alleges that in addition to a written report regarding the blanket graffiti,  she verbally reported at least some of the incidents outside the 2008 EEOC Charge to her supervisors.[23]

On or about December 10, 2009, Plaintiff received a pre-suspension notice, informing her that she was facing a three-day suspension for violation of facility policies and that she had an opportunity to respond to these allegations within seven days of receipt of the Notice.[24] The Notice

---

[19]*Id.* at 11.

[20]*Id.*

[21]*Id.* at 12.

[22]*Id. See also* Affidavit of Dustin Coen at 1-2, Docket No. 55-14; Affidavit of John Sigman at 1, Docket No. 55-15.

[23]*See* Deposition of Shannon Moody at 9-10, 84:17-85:6, ("I verbally spoke to Chief Hood about the comments that were made"); 15-16, 96:20-97:23 ("I went and spoke verbally [to Chief Hood]." "I complained to him about sexual harassment, about the harassment about ongoing issues"); 17, 147:4-12 ("Q: Are you claiming that you have made complaints, verbal complaints, that he didn't act upon?" "A: Correct"), Docket No. 55-3.

The deposition of Chief Curtis Hood also reflects these verbal notifications. *See* Deposition of Curtis Hood at 18, 115:2-25 ("Q: I mean, was she telling you that a lot, that she felt like she was being humiliated a bunch?" "A: It had to be").

[24]*See* Pre-Suspension Notice at 1, Docket No. 65-1.

4

cited two instances of misconduct: (1) an incident on November 20, 2009 where Plaintiff brought personal reading material into the facility, which was prohibited, and also had a small bag of fruit snacks that were not in a clear container, and (2) an incident on November 24, 2009 where Plaintiff brought other personal reading material into the facility.[25] The Notice also cited previous violations by Plaintiff of the facility's personal cell phone policy.[26]

On December 21, 2009, Plaintiff filed another incident report in which she alleged continuing discrimination, specifically that Cadet Swarts informed Officer Dustin Coen that Swarts was told to stay away from Plaintiff unless he wanted to get in trouble for sexual harassment.[27] On December 29, 2009, Plaintiff received a Letter of Suspension, informing Plaintiff that her suspension would run from Monday, January 4, 2010 through Thursday, January 7, 2010, based on the policy violations alleged in the Pre-Suspension Notice.[28] On or about January 22, 2010, Plaintiff was terminated for failing to perform an inmate count in the manner required under facility policy.[29]

**B. Relevant Procedural Background**

Plaintiff's 2008 EEOC Charge was filed on October 16, 2008.[30]   On May 19, 2009, the

---

[25]*Id.* at 2.

[26]*Id.* at 2-3.

[27]*See* Incident/Staff Report at 1, Docket No. 55-9.

[28]*See* Letter of Suspension Without Pay at 1, Docket No. 51-8.

[29]Defendants' Motion for Summary Judgment at 9, Docket No. 51.

[30]2008 EEOC Charge at 1, Docket No. 51-1.

EEOC mailed to Plaintiff a Dismissal and Notice of Rights/Notice of Suit Rights letter regarding the 2008 Charge.[31] Plaintiff did not file suit within 90 days of receiving this letter and thus waived the right to sue based upon that Charge.[32] On March 30, 2010, after her termination, Plaintiff filed another Charge of Discrimination with the EEOC.[33]

In this Charge, Plaintiff cites acts of discrimination beginning July 1, 2007 and occurring through January 31, 2010.[34] The 2010 Charge incorporates generally the allegations against Officers Long, Sutton, and DeAndre from the 2008 Charge and further recites continuing acts of harassment and discrimination allegedly suffered by Plaintiff after the filing of her 2008 Charge of Discrimination.[35] Plaintiff received an EEOC Notice of Right to Sue regarding this Charge on November 18, 2010 and filed suit in this Court on February 14, 2011.[36]

## DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides the standard courts must use when determining whether summary judgment is proper.  According to the rule, summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits demonstrate that there is no genuine issue as to any material fact and that the movant is entitled to

---

[31]Defendants' Motion for Summary Judgment at 10, Docket No. 51.

[32]*Id.*

[33]2010 Charge of Discrimination at 1, Docket No. 55-2.

[34]*Id.*

[35]*Id.* at 10.

[36]*See* Amended Complaint at 2, Docket No. 23.

judgment as a matter of law.[37] A material fact is one that is essential to disposition of a claim, and a genuine issue is present when the trier of fact could resolve it in favor of either party.[38] If conflicting inferences can be drawn from the evidence, summary judgment is improper.[39] "The purpose of a summary judgment motion is to assess whether a trial is necessary. In other words, there must be evidence on which the jury could reasonably find for the plaintiff."[40]

## B. 2008 EEOC Charge/ Motion *in Limine*

The first proposition of Defendants' Motion for Summary Judgment asks the Court to exclude all claims contained in Plaintiff's 2008 EEOC Charge. Defendants contend those claims are time-barred because Plaintiff failed to file suit on those charges within the 90-day time period set out in the May 2009 right to sue notice.[41]  After some questions were raised in Plaintiff's Response, Defendants clarify the position taken in their Reply, stating they are seeking a ruling that "[Plaintiff's] claim cannot be based on the same set of events that she included in her 2008 EEOC Charge."[42] This argument is supplemented in Defendants' Motion *in Limine* which seeks to exclude

---

[37]*See* Fed. R. Civ. P. 56(a),(c).

[38]*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

[39]*Nat'l Football Scouting, Inc. v. Const. Assur. Co.*, 931 F.2d 646 (10th Cir. 1991).

[40]*Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1216 (10th Cir. 2007) (*citation omitted*) (*internal quotation marks omitted*).

[41]Defendants' Motion for Summary Judgment at 10, Docket No. 51 ("Plaintiff's attempt to revive these claims must fail. Plaintiff did not timely pursue legal action on her 2008 EEOC claims, and therefore, all claims asserted by Plaintiff in her 2008 EEOC charge are time-barred").

[42]Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment at 2, Docket No. 65.

any evidence regarding the allegations in the 2008 Charge because those claims are time barred.[43]

Defendants are generally correct. "[D]iscrete discriminatory acts are not actionable when time barred, even when they are related to acts alleged in timely-filed charges."[44] However, hostile environment claims are "different in kind from discrete acts," as "their very nature involves repeated conduct."[45] Plaintiff does not argue that the allegations of her 2008 Charge are actionable as discrete incidents of discrimination.[46] Plaintiff merely contends that the 2008 EEOC allegations constitute additional evidence of a continuing hostile work environment, spanning over two years, for which Plaintiff has brought other, timely claims.[47]

Although time-barred evidence is not sufficient to establish a timely claim, nothing in Title VII bars an employee from using such prior, time-barred acts as background evidence in support of an otherwise timely claim.[48] In fact, the Supreme Court recognized that so long as one act contributing to the hostile work environment took place inside the 300-day filing period, *any* acts outside the period may be considered to complete the history of acts comprising the hostile environment.[49] Defendants offer no authority that Plaintiff's procedural default after the 2008 EEOC

---

[43]*See* Defendants' Motion *in Limine* at 3-4, Docket No. 56.

[44]*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

[45]*Morgan*, 536 U.S. at 115.

[46]Plaintiff's Response to Defendants' Motion *in Limine* at 2, Docket No. 67.

[47]*Id.*

[48]*Haynes v. Level 3 Communications*, 456 F.3d 1215, 1223 (10th Cir.2006) (*citing Morgan*, 536 U.S. at 113).

[49]*Holmes*, 483 F.3d at 1063 (*emphasis added*) (*citing Morgan* 536 U.S. at 117).

8

Right to Sue Letter alters this analysis.

As a preliminary matter, Defendants do not contest that Plaintiff's 2010 EEOC Charge and Amended Complaint include allegations of reported harassment that occurred within the 300-day filing window.[50] Consequently, acts alleged by Plaintiff occurring outside the 300-day window, including those in the 2008 Charge, *may* be considered as part of the history of acts comprising the allegedly hostile work environment. However, Plaintiff cannot merely "dredge up old grievances" and stitch together a disparate patchwork of discrimination in an effort to establish the pattern of sexual harassment necessary for a hostile work environment claim.[51]

To be considered, any allegations outside the 300-day limitations period, including those in Plaintiff's 2008 EEOC Charge, must be part of the same, actionable, hostile work environment practice as those alleged in Plaintiff's 2010 EEOC Charge.[52]  A series of alleged events comprises the same hostile environment where, absent intervening action, "the pre- and post-limitations period incidents involve[d] the same type of employment actions, occurred relatively frequently, and were

---

[50]*See* Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment at 1-2, Docket No. 65 (Defendant is not contending Plaintiff cannot pursue a hostile work environment claim, but simply that her claim cannot be based upon the same set of events that she included in her 2008 Charge). *See also* 2010 EEOC Charge at 1, Docket 55-2 (citing being subjected to unwelcome sexual conversations and pictures); Affidavit, 2010 EEOC Intake at 11-12, Docket No. 55-2 (noting constant rumors/discussions about Plaintiff's sexual proclivities, "trash-talking," and sexual jokes; detailing hostile behavior at shift meetings). *See also* Affidavit, 2010 EEOC Intake at 11-12, Docket No. 55-2  (alleging in June 2009 Captain Price screamed at Plaintiff and stated women should not work there); *id.* at 12 (alleging in December 2009 Officer Soffian asked for pictures of Plaintiff's breasts).

[51]*Holmes v. Utah, Dep't of Workforce Serv.'s*, 483 F.3d 1057, 1063 (10th Cir.2007).

[52]*Duncan v. Manager, Dep't of Safety, City and County of Denver*, 397 F.3d 1300, 1308-09 (10th Cir.2005) (*quoting Morgan*, 536 U.S. 120).

perpetrated by the same managers."[53] With this in mind, the Court must examine the discriminatory acts alleged in the 2008 charge and determine whether they are merely time-barred, discrete acts of discrimination or whether they are part of the same, actionable hostile work environment practice as alleged in Plaintiff's timely claims.

It is clear that, standing alone, the acts of employees Long, DeAndre, and Sutton alleged in the 2008 EEOC Charge could be considered discrete, individually actionable acts of discrimination. However, the allegations in Plaintiff's 2010 EEOC Charge and Amended Complaint and supporting affidavits of other employees, taken as true and in their entirety, indicate that the actions of Long, DeAndre, and Sutton were also part of a greater culture of sexual harassment that went virtually unchecked by the facility's chain of command. This unchecked sexual harassment spans Plaintiff's tenure from the time of her 2008 Charge through her termination and, although varied in substance, allegedly occurred with near constant frequency.

The extent to which Plaintiff reported the ongoing, harassing conduct to her superiors is disputed, but there are undisputed reports for which little or no disciplinary action was taken.[54] Further, the record indicates past managerial response to similar reports by other employees was delayed or often wholly inadequate.[55] As such, the supervisors' alleged failure to timely and

---

[53]*Holmes,* 483 F.3d at 1064.

[54]*See, e.g.,* Deposition of Curtis Hood at 13, 70:222-73:9, Docket No. 55-11 (detailing minimal investigation of logbook graffiti); Defendants' Motion for Summary Judgment at 4, Docket No. 51 (stating Plaintiff was given markers to cover the tower graffiti); Interoffice Memorandum at 1, Docket No. 51-13 (informing Warden Province that Officer Long was made to apologize for his lewd comments to Officer Cross about Officer Moody).

[55]*See* Interoffice Memorandum at 2, Docket No. 55-17 (outlining 2005 instances of harassing conduct by DeAndre); Letter of Suspension at 1-2, Docket No. 55-20 (stating reasons for suspension of Sutton in 2001, years before Plaintiff's allegations; detailing an uncorrected pattern of sexual harassment by Sutton dating back to 1994).

effectively correct the employee conduct set out in the 2008 Charge could be said to have contributed to the alleged hostile work environment throughout the time period of Plaintiff's claim. Consequently, the Court finds that the allegations of the 2008 EEOC Charge involved the same or substantially similar types of harassing and discriminatory conduct, occurred with relative frequency, and was either perpetrated by or ignored by the same managers as the allegations in the timely 2010 EEOC Charge.

In spite of this connection, intervening acts, such as remedial action by an employer, can sever time-barred conduct from consideration in a hostile work environment claim.[56] Defendants tentatively argue that the termination of DeAndre and the disciplinary action against Long constitute intervening action separating these incidents from the remaining hostile work environment claims.[57] Although the termination of DeAndre might generally constitute an intervening act, the DeAndre termination has far less intervening impact on the overall hostile environment when viewed in light of Defendants' other disciplinary responses. In reality, the Court believes Defendants' disciplinary actions only bolster Plaintiff's contention that supervisors, at a minimum, ignored complaints of hostile working conditions.

For example, Jake Long faced no formal discipline for his inappropriate comments to Plaintiff and was merely made to informally apologize to her.[58] This obviously did little to correct Officer Long's conduct, as he was given a "cease and desist" letter for sexual harassment of another

---

[56]*See Holmes* 483 F.3d at 1064.

[57]Defendants' Motion for Summary Judgment at 11, ¶¶9-10, Docket No. 51.

[58]*See* Interoffice Memorandum at 1, Docket No. 51-13; Deposition of Curtis Hood at 6, 44:4-18, Docket No. 55-11 (stating that any discipline received by Officer Long was unrelated to any claims of sexual harassment).

employee soon after Plaintiff's termination.[59] As for the Sutton allegations, despite being made aware of Officer Sutton's conduct through Plaintiff's 2008 Charge, the record evidences even less corrective action by supervisors against Sutton. This inaction occurred despite Sutton's pattern of sexual misconduct going back nearly a decade.[60] These instances evidence Defendants' relaxed disciplinary response to Plaintiff's 2008 complaints of harassment.[61]   As such, the acts of these officers in the 2008 Charge and the supervisory response to these acts are integral parts of the hostile work environment alleged by Plaintiff.

After the Court's thorough review of the record presented, the "disciplinary action" cited by Defendants' can in no way be said to have intervened, or corrected the hostile conditions under which Plaintiff allegedly suffered. In light of the record evidence regarding overall disciplinary practices, even so drastic a step as the termination of David DeAndre cannot be said to have intervened, as it apparently did nothing to deter the rampant, similar conduct of other officers. Ultimately, DeAndre's termination  merely demonstrates that supervisors only took action when harassing conduct was both repeated and particularly egregious. Read in its entirety, the record evidences that supervisors generally took only minimal action that failed to even marginally correct the overall hostile working environment.  Consequently, the Court finds that there is no intervening

---

[59]See Cease and Desist Letter at 1-2, Docket No. 55-22.

[60]*See* Sutton Letter of Suspension at 1,3-4, Docket No. 55-20.

[61]Additionally, the reported misconduct of these specific officers goes back much farther than Plaintiff's 2008 Charge. *See* Interoffice Memorandum at 2, Docket No. 55-17 (outlining 2005 instances of harassing conduct by DeAndre); Notice of Pre-Suspension Hearing at 5-6, Docket No. 55-17 (noting two incidents of unwanted groping, omitting 2005 instances in past-conduct section); Letter of Suspension at 1-2, Docket No. 55-20 (stating reasons for suspension of Sutton in 2001, years before Plaintiff's allegations; detailing an uncorrected pattern of sexual harassment by Sutton dating back to 1994).

action on the part of Defendants that would sever the acts alleged in the 2008 EEOC Charge from Plaintiff's 2010 hostile work environment claim.[62]

The record evidence demonstrates that the claims in Plaintiff's 2008 EEOC Charge were part of the same, actionable, hostile work environment practice as alleged in her 2010 Charge and Amended Complaint. As such, those allegations should be considered by the jury. Furthermore, introduction of evidence related to those claims is relevant to these proceedings, and Defendants will suffer no unfair prejudice from the introduction of evidence related to those claims. Consequently, both Defendants' Motion for Summary Judgment and Motion *in Limine* as to this issue are **DENIED**.

## C. §1983 Claim

In Defendants' second proposition, Defendant Province seeks summary judgment on Plaintiff's §1983 claims against him in his individual capacity.[63] In the alternative, Defendants' third proposition asks this Court to find that Defendant Province is entitled to qualified immunity with respect to Plaintiff's §1983 claims.[64] Plaintiff seeks redress against Defendant Province under §1983, alleging that Province at least tacitly approved of the hostile work environment by failing to remedy Plaintiff's complaints, in violation of her rights under the Fifth and Fourteenth Amendments to the

---

[62]*See Holmes* 483 F.3d at 1063 ("[I]f an act on day 401 had no relation to the acts between days 1–100, or for some other reason, such as certain intervening action by the employer, was no longer part of the same hostile environment claim, then the employee cannot recover for the previous acts, at least not by reference to the day 401 act") (*quoting Morgan*, 536 U.S. at 118).

[63]Defendants' Motion for Summary Judgment at 15, Docket No. 51.

[64]*Id.* at 20.

13

Constitution.[65] Plaintiff further alleges that Defendant Province engaged in disparate treatment of male and female employees with regard to discipline and termination practices, in violation of Plaintiff's right to equal protection under the law.[66]

## 1. Failure to Remedy Hostile Work Environment

Section 1983 imposes liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a custom or policy that causes the deprivation of a person's federally protected rights.[67] Therefore to succeed in a § 1983 suit against Defendant Province, Plaintiff must demonstrate:

> (1)the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a custom or policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation.[68]

Plaintiff does not point to a specific policy. Rather, Plaintiff essentially argues that, in failing to properly investigate harassment allegations and in failing to implement the facility's "zero-tolerance policy," Defendant Province established and utilized an unconstitutional, *de facto* custom of ignoring pervasive sexual harassment.[69] Plaintiff further maintains that this custom ultimately led to the violation of Plaintiff's rights to due process and equal protection under the law.[70] Plaintiff

---

[65]Amended Complaint at 8-9, Docket No. 23; Plaintiff's Response to Defendants' Motion for Summary Judgment at 34, Docket No. 55.

[66]*Id.* at 9; *id.* at 36.

[67]*Dodds v. Richardson*, 614 F.3d 1185, 1201 (10th Cir.2010).

[68]*Id.* at 1199.

[69]*See* Plaintiff's Response to Defendants' Motion for Summary Judgment at 33-34, Docket No. 55.

[70]*Id.*

finally offers that Defendant Province's inadequate action or outright inaction in the face of multiple reports of harassment evidences deliberate indifference to the risk of constitutional violations by male employees against female employees, satisfying the culpable state of mind requirement.[71]

In support of this position, Plaintiff offers both the incident reports and testimonial evidence of specific instances where Defendant Province was made directly aware of continuing harassment and failed to act upon it.[72] Other testimonial evidence supports Plaintiff's position that Defendant Province was at least minimally aware of the frequent sexual harassment allegations at the facility.[73] Further, Defendant offers little to challenge that Plaintiff's rights were violated as a result of the unchecked harassment. At a minimum, this evidence creates disputed questions of fact as to whether Defendant Province, the chief policy-maker at the facility, possessed the ultimate responsibility for a *de facto* custom of inaction with regard to sexual harassment allegations, and whether that custom directly resulted in a deprivation of Plaintiff's constitutional rights.

Although Plaintiff has established disputed questions of fact with regard to whether Defendant Province was responsible for any custom of inaction that may have resulted in violations of her Constitutional rights, Plaintiff must also show that Defendant Province had a culpable state of mind. When, as here, a plaintiff alleges a substantive due process violation, deliberate

---

[71]*Id.* at 33.

[72]*See id.* at 17-18, ¶¶22-24 (allegations Plaintiff spoke to Province directly about Price incident and other frequent sexual harassment); 19, ¶¶30-33 (allegations Plaintiff spoke directly with Province about Long incident and Swarts/Coen incident).

[73]*See, e.g.,* Deposition of Gregory Province at 16, 77:3-12, Docket No. 55-12 (referencing Warden Province's knowledge of the Price incident); Deposition of Curtis Hood at 4, 20:9-20; 9, 64:16-66:7; Docket No. 55-11 (referencing Hood's communication of harassment to Province). *See also* Interoffice Memorandum at 2, Docket No. 55-17.

indifference generally constitutes the required state of mind.[74] To demonstrate deliberate indifference, a plaintiff must offer evidence that would establish that the defendant "knew he was creating a situation that created a substantial risk of constitutional harm."[75]

Plaintiff has offered disputed evidence that, taken in a light most favorable to Plaintiff, tends to show (1) that Defendant Province was ultimately responsible for administering and maintaining discipline,[76] (2) that Defendant Province knew about frequent allegations of sexual harassment in violation of facility policy,[77] (3) that despite being made aware of this conduct and knowing its potential harm to the due process rights of female employees, Defendant Province either ignored or failed to adequately address these issues, and (4) that by doing so, female employees like Plaintiff suffered actual, constitutional harm. Consequently, Plaintiff has offered evidence from which a reasonable jury could infer Defendant knowingly created a substantial risk of constitutional injury to Plaintiff and those similarly situated. Plaintiff therefore establishes a disputed question of fact as to whether Defendant Province acted with deliberate indifference with regard to reports of sexual harassment.

---

[74] *See Dodds*, 614 F.3d at 1205 (assuming, without deciding, that deliberate indifference constitutes required state of mind for substantive due process violation of preventing arrestee from posting bail); *Green v. Post*, 574 F.3d 1294, 1301 (10th Cir.2009) (explaining when plaintiff alleges substantive due process violation and "when actual deliberation is practical" court will employ deliberate indifference standard).

[75] *Serna v. Colorado Department of Corrections*, 455 F.3d 1146, 1155(10th Cir.2006).

[76] *See* Deposition of Greg Province at 2-3, 26:19-27:11; 7-9, 49:23-25; 9, 58:1-4, Docket No. 55-12.

[77] *See, e.g.,* Deposition of Gregory Province at 16, 77:3-12, Docket No. 55-12 (referencing Warden Province's knowledge of the Price incident); Deposition of Curtis Hood at 4, 20:9-20; 9, 64:16-66:7; Docket No. 55-11 (referencing Hood's communication of harassment to Province). *See also* Interoffice Memorandum at 2, Docket No. 55-17.

2. Disparate Discipline and Termination Policies

Plaintiff also contends that Defendant Province maintained a policy of disparate treatment where male employees were generally disciplined less harshly than female employees.[78] This included terminating female employees for offenses for which male employees would not be terminated.[79]  Plaintiff contends that this policy violated her right to equal protection under the law. In support of her argument, Plaintiff offers evidence that Defendant Province was the ultimate decision-maker with regard to discipline and termination determinations.[80] Plaintiff offers further evidence, including exemplar discipline reports of other employees and affidavits of male employees, that at a minimum creates a material question of fact as to whether or not there was a policy of disparate treatment.[81]

Because Defendant Province was ultimately responsible for all discipline and termination matters, a reasonable jury could infer from the evidence proffered by Plaintiff that Defendant Province maintained, and was ultimately responsible, for any policy or custom of disparate treatment with regard to discipline and termination decisions. If proven at trial, this evidence would establish that Defendant Province acted, at a minimum, with deliberate indifference, knowingly creating a substantial risk of constitutional injury (i.e., violation of the right to equal protection) to people like

---

[78]*See* Plaintiff's Response to Defendants' Motion for Summary Judgment at 33-34, 37, Docket No. 55.

[79]*Id.*

[80]*See* Deposition of Greg Province at 2-3, 26:19-27:11; 7-9, 49:23-25; 9, 58:1-4, Docket No. 55-12.

[81]*See, e.g.,* Letter of Suspension at 1-2, Docket No. 55-20 (stating reasons for suspension of Sutton in 2001, years before Plaintiff's allegations; detailing an uncorrected pattern of sexual harassment by Sutton dating back to 1994); Affidavit of Dustin Coen at 1-2, Docket No. 55-14.

Plaintiff.

3. Qualified Immunity

Defendant Province also invokes qualified immunity. Qualified immunity provides that in the performance of discretionary functions, government officials will not be liable for their conduct unless their actions violate clearly established statutory or Constitutional rights of which a reasonable person would have known.[82] To overcome a defense of qualified immunity, Plaintiff must offer evidence from which a reasonable jury could find that Defendant Province violated Plaintiff's constitutional rights and that the rights violated were clearly established at the time of Defendant Province's actions.  Plaintiff does so.

Plaintiff's §1983 claims rest on allegations and evidence of discriminatory employment practices engaged in by Defendant Province. In discussing whether rights regarding employment discrimination  were "clearly established," the Tenth Circuit has plainly stated:"[t]he protection afforded by §1983 includes relief from discriminatory employment practices of public employers."[83] This statement delineates the clearly established law in this instance.  As noted above, Plaintiff has offered facts that evidence Defendant Province engaged in, or was deliberately indifferent to, discriminatory practices that were in violation of clearly established law. These facts, if proven at trial, would demonstrate Defendant Province violated Plaintiff's clearly established rights.

Plaintiff has offered evidence sufficient to create questions of material fact with regard to whether Defendant Province maintained a custom of ignoring allegations of sexual harassment and

---

[82]*Medina v. City and County of Denver*, 960 F.2d 1493, 1497 (10th Cir.1992).

[83]*Ramirez v. Department of Corrections, Colo.*, 222 F.3d 1238, 1243-44 (10th Cir.2000) (*quoting Poolaw v. City of Anadarko, Okla.*, 660 F.2d 459, 462 (10th Cir.1981)).

policies that propagated disparate treatment of male and female employees. Plaintiff has offered further evidence that supports a finding she suffered injury to her Constitutional rights as a result of these policies. Plaintiff has also proffered evidence that places in dispute whether or not Defendant Province acted with the requisite state of mind to establish §1983 supervisor liability. Denying both summary judgment and qualified immunity on the basis of such a showing complies with the requirement that § 1983 liability only be imposed upon defendants whose own individual actions cause a constitutional deprivation.[84] Consequently, Defendants' Motion for Summary Judgment and invocation of qualified immunity with respect to Plaintiff's §1983 claims is **DENIED**.

**D. Intentional Infliction of Emotional Distress**

Defendants' fifth proposition seeks summary judgment on Plaintiff's claim for intentional infliction of emotional distress (IIED) against Defendant Province in his individual capacity. "To recover damages for intentional infliction of emotional distress, a plaintiff must prove: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe."[85] It is the trial court's responsibility initially to determine whether a defendant's conduct may reasonably be regarded as sufficiently extreme and outrageous to meet these standards.[86]

Although the allegations against Defendant Province, if true, are certainly deplorable, this

---

[84]*Dodds*, 614 F.3d at 1200.

[85]*Computer Publications, Inc. v. Welton*, 2002 OK 50, ¶7, 49 P.3d 732, 735.

[86]*Trentadue v. United States*, 397 F.3d 840, 856, n.7 (10th Cir. 2005)(*applying Oklahoma law*).

Court cannot find they rise to the level of outrageousness required to support a claim of IIED.[87]

Consequently, Defendant Province is entitled to summary judgment on Plaintiff's intentional

infliction of emotional distress claim. Defendant's Motion for Summary Judgment with respect to

Plaintiff's claim of intentional  infliction of emotional distress as against Defendant Province is

**GRANTED**.

### E. Title VII Retaliation Claim

In their Motion for Summary Judgment Defendants argue that they are entitled to summary

judgment on Plaintiff's Title VII retaliation claim because Plaintiff offers no evidence that she

engaged in protected activity, which is the threshold showing for a claim of retaliation.[88] In their

Reply, Defendant's further allege that Plaintiff cannot show a causal link between her claims of

protected activity and any adverse employment action by Defendants.[89]

Where, as here, there is no direct evidence of retaliation, the Court analyzes a retaliation

claim under the *McDonnell Douglas* burden-shifting framework.[90]  Under this framework, Plaintiff

---

[87] *See, e.g, Gabler v. Holder & Smith, Inc.,* 2000 OK CIV APP 107, ¶64, 11 P.3d 1269, 1280 (noting that employment related facts rarely rise to a level of extreme and outrageous conduct);  *Anderson v. Oklahoma Temporary Services, Inc.,* 1996 OK CIV APP 90, ¶¶12, 14, 925 P.2d 574, 577 (no IIED where supervisor made lewd remarks about plaintiff, embarrassed plaintiff by discussing her faults while with co-workers)*; Miner v. Mid-America Door Co.*, 2002 OK CIV APP 32, ¶43, 68 P.3d 212, 223-24. (employer's alleged failure to quickly reassign the plaintiff after learning of workplace harassment, even if both untimely unreasonable, was not extreme and outrageous).

[88] Defendants' Motion for Summary Judgment at 29, Docket No. 51.

[89] Defendants' Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment at 8, Docket No. 65.

[90] *See Jeffries v. State of Kansas,* 147 F.3d 1220, 1231 (10th Cir.1998) (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)) (applying the *McDonnell Douglas* framework to a claim of retaliation).

must first establish a *prima facie* case of retaliation by showing that: "(1) she engaged in protected opposition to discrimination; (2) [Defendants] took an adverse employment action against her; and (3) there exists a causal connection between the protected activity and the adverse action."[91] If an employee presents a *prima facie* case of discrimination, the burden shifts to the employer to produce a legitimate, non-discriminatory justification for taking the disputed employment action.[92] "If the employer provides a legitimate, non-discriminatory justification for the action, the burden shifts back to the employee to provide evidence showing that the employer's proffered reason is a pretext for discrimination."[93]

Defendants do not dispute that Plaintiff's suspension and termination constitute adverse employment actions. Defendants merely argue that Plaintiff has not met the other two prongs of the *prima facie* analysis. The Court addresses each of Defendants' arguments in turn.

1. Protected Activity

Defendants first attack whether Plaintiff ever engaged in protected activity that could form the basis of a retaliation claim. Defendants argue that Plaintiff failed to report any violations and therefore failed to engage in protected opposition. To support Plaintiff's claim of retaliation, it is crucial that Plaintiff's superiors knew she was engaging in protected activity before taking any adverse action.[94] An informal complaint to superiors may constitute protected activity if it

---

[91]*Stover v. Martinez*, 382 F.3d 1064, 1071 (10th Cir.2004).

[92]*Id.*

[93]*Id.*

[94]*Petersen v. Utah Dept. of Corrections*, 301 F.3d 1182,1188 (10th Cir.2002) ("An employer's action against an employee cannot be because of that employee's protected opposition unless the employer knows the employee has engaged in protected opposition").

adequately puts an employer on notice of an employee's allegations of Title VII violations.[95]

Defendants' argument that Plaintiff did not engage in protected activity for which she was retaliated against hinges on their contention that Plaintiff made only one *written* complaint of *sexual harassment* after her 2008 EEOC Charge.[96] Defendants' position on this issue is disingenuous at best. In addition to her November 2008 formal incident report about the lewd graffiti referencing Plaintiff on the tower stair cover, Plaintiff also filed the December 21, 2009 incident report, in which she alleged that Cadet Swarts informed Officer Dustin Coen that Swarts was told to stay away from Plaintiff unless he wanted to get in trouble for sexual harassment.[97] Contrary to Defendant's contention, the filing of this report evidences Plaintiff's direct opposition to the continuing, unchecked discrimination by co-workers and immediate supervisors, and vocal opposition to the generally hostile environment toward women at the facility. Additionally, the record indicates that supervisors were on notice of the January 2009 incident where lewd comments about Plaintiff were written on the tower walls and logbook.[98] The conduct Plaintiff unarguably reported, if true, violates Title VII. As such, the December 21, 2009 incident report constitutes protected opposition.[99]

Furthermore, there remain disputed questions of fact as to the frequency and detail of

---

[95]*See Hertz v. Luzenac America, Inc.*, 370 F.3d 1014, 1015 (10th Cir.2004).

[96]Defendant's Motion for Summary Judgment at 27, Docket No. 51.

[97]*See* Incident/Staff Report at 1, Docket No. 55-9.

[98]*See* Logbook Note at 2, Docket No. 55-10 (notation by Curtis Hood that he had reviewed the logbook graffiti on 3/1/09). *See also, generally,* Deposition of Greg Province at 10-13, Docket No. 55-12 (discussing Defendant Province's response to tower graffiti incidents).

[99]Further, this allegation mirrors her 2008 informal allegation that Captain Price and Sergeant Bowers informed co-workers similarly, evidencing that the behavior had not been corrected. *See* Deposition of Gregory Province at 16, 77:3-12, Docket No. 55-12 (referencing Warden Province's knowledge of the Price incident).

informal reports of continuing harassment and discrimination by Plaintiff to her supervisor, Chief Curtis Hood.[100] These informal reports, if proven at trial, would also evidence that Plaintiff frequently engaged in other protected activity that would support a claim of retaliation. Consequently, Plaintiff can clearly demonstrate that she engaged in a protected activity, satisfying the first prong of a *prima facie* retaliation claim.

2. Causation

Raised for the first time in their Reply, Defendants also contend that even if Plaintiff can show any protected opposition, she cannot show any causal connection between Plaintiff's protected opposition and any adverse employment actions.[101] Setting aside that arguments raised in a reply brief are generally waived, Defendants' contention is only partially correct.[102]

A *prima facie* case of retaliation requires a demonstration of some causal connection between any adverse employment action complained of and the employee's protected activity.[103] Unless the adverse action complained of is very closely connected in time to the protected conduct, Plaintiff must rely on other evidence to establish causation.[104] A one and one-half month period between the

---

[100]*See supra* note 22 (Citing discussion of informal reports in the record).

[101]Defendants' Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment at 8, Docket No. 65 (stating Plaintiff cannot show protected activity or causal connection).

[102]*See Cahill v. American Family Mut. Ins. Co.*, 610 F.3d 1235, 1239 (10th Cir.2010) (*citing Hill v. Kemp*, 478 F.3d 1236, 1250-51 (10th Cir.2007) (arguments first raised in a reply brief come too late)).

[103]*Stover*, 382 F.3d at 1071.

[104]*Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir.1999).

protected activity and adverse action may, by itself, satisfy the causal connection requirement.[105]

Defendants are correct in their assertion that Plaintiff cannot demonstrate any causal connection between Plaintiff's December 29, 2009 notice of suspension and Plaintiff's December 21, 2009 incident report. The events underlying Plaintiff's suspension occurred in November of 2009, and Plaintiff received a pre-suspension notice regarding her imminent suspension based on these incidents on December 10, 2009. This evidence shows that Plaintiff's suspension was implemented eleven days before Plaintiff filed the incident report she alleges was the impetus for her suspension. Although the underlying causes for Plaintiff's suspension, when compared to the other suspension notices in the record, may suggest disparate treatment, the fact that the suspension was decided before Plaintiff's report defeats any presumption that the December 21st incident report was the reason for her suspension.

However, Defendants' assertion that Plaintiff wholly fails to offer evidence of a causal connection is incorrect. There remain adverse employment actions for which causal connection remains a material issue. Disputed questions of material fact remain as to the nature and extent of Plaintiff's informal reports to Chief Hood that, if proven, could provide incidents of protected activity for which there is a causal connection to Plaintiff's suspension. Further, Plaintiff's termination, clearly an adverse employment action, occurred in January 22, 2010, merely one month after Plaintiff's December 21, 2009 complaint. The short length of time between these two events, when examined in the context of Plaintiff's continuing formal and informal complaints, is enough to establish a material question of fact as to causation between the incident report and Plaintiff's

---

[105]*Id.*

termination.[106]

3. Burden Shifting

As the Plaintiff can demonstrate a *prima facie* case for retaliation under the *McDonnell Douglas* framework, the burden now shifts to Defendants to provide a legitimate, non-discriminatory justification for Plaintiff's termination.[107] Defendants do so. Defendants first posit that Plaintiff was suspended for the multiple violations of facility policy cited in her suspension letter.[108] Defendant further contends that Plaintiff was terminated for her January 1, 2010 conduct where Plaintiff allegedly: (1) failed to properly perform an unscheduled inmate count, (2) refused to acknowledge the failure to her supervisors, and (3) lied to supervisors regarding what had occurred.[109]

Because Defendants have offered a legitimate, non-discriminatory justification for both Plaintiff's suspension and her termination, Plaintiff must provide evidence that demonstrates a material question of fact as to whether Defendants' proffered reason is a pretext for discrimination.[110] To demonstrate material questions of fact as to pretext an employee must offer

---

[106]*See id.* at 1074 (*citing Annett v. Univ. of Kansas*, 371 F.3d 1233, 1237-38 (10th Cir.2004) (concluding that a period of two to three months between the protected activity and the alleged retaliatory action was close enough to establish a *prima facie* case of causation); *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir.1999) (assuming that temporal proximity of two months and one week is sufficient to support a *prima facie* case of retaliation); *Ramirez v. Oklahoma Dep't. of Mental Health, 41 F.3d 584, 596* (10th Cir.1994) (concluding that a one and one-half month period between protected activity and adverse action may establish causation)).

[107]*Stover* 382 F.3d at 1070.

[108]*See* Defendant's Motion for Summary Judgment at 21-22, Docket No. 51 (discussing Plaintiff's violations underlying suspension in context Defendant Province's culpability).

[109]Defendants' Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment at 6, Docket No. 65 (discussing propriety of Plaintiff's termination).

[110]*Stover* 382 F.3d at 1070.

evidence that indicates the employer's proffered reason was "so inconsistent, implausible, incoherent, or contradictory that it is unworthy of belief."[111] Plaintiff too, meets her burden.

Plaintiff has offered disputed evidence of the disparate treatment of employees with regard to discipline and termination decisions.[112] This disparate treatment alone would be enough to raise disputed questions of fact as to the consistency of Defendants' discipline and termination procedures, and therefore questions as to whether Defendants' suspension and termination of Plaintiff was so inconsistent as to be unworthy of belief. Plaintiff also offers some evidence that, taken in a light most favorable to Plaintiff, tends to show that Plaintiff's actual suspension and termination were either contradictory or inconsistent with facility policy.[113]

Based on this evidence, the Court finds that a reasonable jury could find that Defendants' non-discriminatory reason for disciplining and terminating Plaintiff was pretextual and not worthy of belief. Because there remain disputed questions of material fact with regard to each element of Plaintiff's Title VII retaliation claim, Defendants' Motion for Summary Judgment on that claim is **DENIED**.

## <u>CONCLUSION</u>

For the reasons cited above, Defendants' Motion for Summary Judgment is **GRANTED IN**

---

[111]*Id.*

[112]*See supra* note 80 (citing record evidence of disparate treatment and termination policies).

[113]*See* Plaintiff's Response to Defendants' Motion for Summary Judgment at 37, Docket No. 55 (*citing* Deposition of Greg Province at 33-34, 142:13-143:12; 37-39, 148:9-150:25) (discussing factual bases of Plaintiff's suspension and termination in the context of actual facility policies).

**PART, DENIED IN PART**.[114] Defendants' Motion *in Limine* is **DENIED**.[115]

James H. Payne
United States District Judge
Northern District of Oklahoma

---

[114]Docket No. 51.

[115]Docket No. 56.